## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

UNITED STATES OF AMERICA

v.

TERRENCE RENARD RUSSELL,

    Defendant.

Case No. 1:97-cr-382-1

### AMENDED MEMORANDUM OPINION & ORDER

Before the Court is Defendant Terrence Renard Russell's Motion for Reconsideration on his Motion to Reduce Sentence Pursuant to § 404 of the First Step Act of 2018 (hereinafter "the First Step Act"). ECF No. 326. The Court has fully considered the arguments of counsel and determined that a hearing is not necessary. For the reasons set forth below, the motion is **GRANTED**.

## I.   BACKGROUND

On January 27, 1998, a jury convicted the defendant on three counts:

- Count One: Conspiracy to distribute 50 grams or more of marijuana, cocaine, and cocaine base (21 U.S.C. § 846);

- Count Two: Aiding and abetting murder in furtherance of a drug trafficking offense (21 U.S.C. § 848(e)(1)(A)); and

- Count Six: Interstate transportation in aid of racketeering (18 U.S.C. § 1952).

ECF No. 37. On May 8, 1998, the Honorable Henry Coke Morgan, Jr. sentenced the defendant to imprisonment for life on all three counts, to be served concurrently. ECF

No. 46. On July 15, 1999, the United States Court of Appeals for the Fourth Circuit affirmed the defendant's conviction. ECF No. 94; *United States v. Wesley*, 187 F.3d 633 (4th Cir. 1999) (unpublished).

On February 23, 2021, the Federal Sentence Reduction Clinic at the University of Virginia School of Law filed a motion on the defendant's behalf, seeking a reduction under the First Step Act. ECF No. 271. The matter was transferred to this Court on March 17, 2023.

In a Memorandum Opinion and Order dated August 15, 2023, the Court granted in part and denied in part the motion to reduce the defendant's sentence. ECF No. 321. The Court concluded that the defendant was eligible for relief on Count One and reduced his sentence on that count to time served. However, the Court believed that the United States Supreme Court's decision in *Terry v. United States*, and its Fourth Circuit progeny, foreclosed relief on the other two counts. ECF No. 321 at 6 (citing *Terry v. United States,* 593 U.S. 486, 492 (2021); *United States v. Thomas*, 32 F.4th 420, 429 (4th Cir. 2022); *United States v. Roane*, 51 F.4th 541, 550 (4th Cir. 2022)).

On August 29, 2024, the defendant filed a motion for reconsideration, arguing that the Court erred by failing to consider whether the sentence package doctrine might allow it to reach Counts Two and Six notwithstanding the rule of *Terry*. ECF No. 326 at 5–8. In its opposition, the government contends that sentences for non-covered offenses can be reduced under the First Step Act, but only when they "cannot

reasonably be separated" from a sentence for a covered offense. ECF No. 332 at 4.[1] The government suggests that the Court should not reduce the defendant's sentence on Count Two, because the total sentence "was driven by the murder, not the crack dealing." *Id.* at 5.

After the parties briefed the instant motion, the Fourth Circuit decided *United States v. Richardson*, No. 22-67488, 2024 WL 1183539 (4th Cir. Mar. 20, 2024)[2], in which it made clear that the sentence package doctrine allows district courts to reduce a sentence for an offense not covered by the First Step Act, when that sentence was packaged together with a sentence for a covered offense. *Id.* at *4. Considering *Richardson*, the Court now revisits its decision on the motion to reduce the defendant's sentence under the First Step Act.

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration

The Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration. *Nilson Van & Storage Co. v. Marsh*, 755 F.2d 362, 364 (4th Cir. 1985). Therefore, courts in this circuit "are guided by analogy to the standards established by the civil rules." *United States v. Young*, 260 F. Supp. 3d 530, 555 (E.D. Va. 2017); *e.g., United States v. Benjamin*, No. 3:21-cr-525, 2023 WL 3325268, at *2 (D.S.C. May 9, 2023); *United States v. Fullwood*, No. 1:17-cr-10, 2023 WL 8439913,

---

[1] The government waived procedural limits to reconsideration. ECF No. 332 at 3 n.3.

[2] As of the date of this Memorandum Opinion and Order, only the West version of *Richardson* is paginated, so the Court will use that citation. The Court anticipates that *United States v. Richardson* will soon be reported at 96 F.4th 659.

at *2 (W.D.N.C. Dec. 5, 2023); *United States v. Royal*, No. 1:18-cr-431, 2022 WL 3648027, at *2 (D. Md. Aug. 24, 2022); *see also United States v. Sellers*, No. 21-4305, 2022 WL 964016, at *1 (4th Cir. Mar. 30, 2022) (unpublished) (affirming after district court granted motion for reconsideration); *United States v. Holland*, 396 Fed. App'x 937, at *1 (4th Cir. Sept. 10, 2010) (unpublished) (affirming grant of motion for reconsideration).

"When a party in a criminal case moves for reconsideration, it is within the sole discretion of the district court to determine whether it is appropriate to grant the motion." *United States v. Mallory*, 337 F. Supp. 3d 621, 626 (E.D. Va. 2018) (citations omitted); *see Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020) (denial of a motion for reconsideration reviewed for abuse of discretion). A motion for reconsideration can succeed when it seeks a change in the district court's ruling "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Wojcicki*, 947 F.3d at 246 (alterations accepted and citation omitted).

## B.   Motion to Reduce Sentence Under the First Step Act

Motions for sentence reductions under § 404 of the First Step Act fall within 18 U.S.C. § 3582(c)(1)(B). *United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019); *see United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177, 184–85 (4th Cir. 2023). Section 3582(c)(1)(B) allows district courts to "modify an imposed term of imprisonment to the extent [] expressly permitted by statute[.]"

Section 404(b) of the First Step Act provides that courts "may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). "Covered offenses" include any "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a). The decision to grant relief ultimately remains in the district court's discretion. *See id.* § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

If a court chooses to exercise its discretion to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(B) and the First Step Act, it determines the new sentence by looking to the factors outlined in 18 U.S.C. § 3553(a). *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021). Additionally, the court must take into account post-sentencing conduct and mitigating evidence. *United States v. McDonald*, 986 F.3d 402, 411 (4th Cir. 2021).

## III.   ANALYSIS

### A.   The Motion for Reconsideration is Proper.

The Court will reconsider its decision on the motion for sentence reduction because there has been a change in Fourth Circuit law concerning the sentence package doctrine. Additionally, the instant motion must be granted because the Court was required to consider the defendant's nonfrivolous argument to apply the doctrine

before the Fourth Circuit adopted it in the context of motions under the First Step Act.

At the time the defendant filed the instant motion, the Fourth Circuit had not yet decided *Richardson*. Therefore, the "change in controlling law" that *Richardson* represents—namely, adoption of the sentence package doctrine as a vehicle for reducing a sentence for a non-covered offense under the First Step Act—was not operative. Nevertheless, the Court finds it prudent to consider a new, published decision on point as a reason to take a second look at the defendant's motion for sentence reduction. Thus, the motion for reconsideration will be granted, to "accommodate an intervening change in controlling law." *Wojcicki*, 947 F.3d at 246.

The defendant's argument in his original motion for sentence reduction was based on a doctrine the Fourth Circuit had not yet clearly adopted in this context, and it drew on recent district court cases that did not bind this Court. *See* ECF No. 271 at 25–28 (citing *Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019); *United States v. Williams*, No. 3:02-cr-548-3, 2019 WL 3251520, at *2 (D.S.C. July 19, 2019); *United States v. Wood*, No. 2:93-cr-90, ECF No. 289, at 3 (E.D. Ca. Mar. 27, 2020); *United States v. Hill*, 611 F. Supp. 3d 23, 28 (D. Md. 2020)). Therefore, declining to *apply* the sentence package doctrine argument could not have been a "clear error of law." *Wojcicki*, 947 F.3d at 246.

However, the Court's failure to *consider* the sentence package doctrine argument in its written Memorandum Opinion and Order was error. The defendant's argument under the sentence package doctrine was "nonfrivolous"—the Fourth

Circuit made that clear when it adopted the theory in *Richardson*—so the Court was "obligated to consider" the sentence package doctrine in deciding the motion for sentence reduction. *Concepcion v. United States*, 597 U.S. 481, 487 (2022). Accordingly, in addition to granting the motion for reconsideration in order to consider a change in the law, the Court will also grant the motion to "correct a clear error" under *Concepcion* and will evaluate the defendant's arguments under the sentence package doctrine. *Wojcicki*, 947 F.3d at 246.

**B. The Court Has Discretion to Reduce the Defendant's Sentences for Non-Covered Offenses Because the Entire Sentence Functions as a Package.**

The First Step Act has always clearly enabled a court to reduce a defendant's sentence for a "covered offense." *Terry*, 593 U.S. at 492. As the Court outlined it its Memorandum Opinion and Order on the motion to reduce sentence, Count One was undisputely "a covered offense," but Counts Two and Six were not. ECF No. 321 at 5–6.[3] Before *Richardson*, the clearest statement on whether a district court could reach Counts Two and Six came from *Roane*, which stated that 21 U.S.C. § 848(e)(1)(A)—Count Two—"is not a covered offense" eligible for sentence reduction

---

[3] It was undisputed that the Fair Sentencing Act reduced the statutory minimum sentences for offenses involving cocaine base (*e.g.*, Count One) by raising the quantities required to trigger minimums under 21 U.S.C. § 841. Therefore, Count One was a covered offense. However, the Fourth Circuit determined that aiding and abetting murder in furtherance of a drug trafficking offense, under 21 U.S.C. § 848(e)(1)(A) (Count Two), "is not a covered offense eligible for sentence reduction under the First Step Act," *Roane*, 51 F.4th at 550 (quotation marks omitted), and the parties agree that interstate transportation in aid of racketeering (Count Six) is not a covered offense (ECF No. 271 at 25).

"under the First Step Act." 51 F.4th at 546. However, the Fourth Circuit has now explained that the First Step Act leaves room for courts to reduce sentences for non-covered offenses as well. *Richardson*, 2024 WL 1183539, at *4.[4] Specifically, district courts have "the discretion to reduce both covered and noncovered offenses under the First Step Act if they function as a package." *Id.*

The Fourth Circuit explicitly declined to determine whether the specific charges in *Richardson* functioned as a package, noting that the trial judge is best "situated to determine whether the noncovered counts were interrelated [at the time they] sentenced the defendant." *Richardson*, 2024 WL 1183539, at *6. However, in observing several "hints in the record" that the charges there did "not represent freestanding sentences distinct from each other," the Fourth Circuit's opinion provided helpful insight that guides this Court. *Id.* at *7.

That guidance is perhaps more needed here than in the typical case. Ordinarily, the sentencing judge would know whether they intended a defendant's sentence to function as a package, and they could simply apply that knowledge to a motion for sentence reduction and explain their reasoning. *See Richardson*, 2024 WL 1183539, at *6 (". . . the best entity to determine the intention of the district court's sentence is the district court itself."). But this Court is called upon to determine what *another* judge intended. That task is made more challenging by the fact that, in 1998,

---

[4] The *Richardson* Court reasoned that because "the language of the First Step Act does not bar a court from reducing a non-covered offense," 2024 WL 1183539, at *4 n.6, placing such offenses outside courts' reach even when they are grouped with covered offenses "would impose an 'extra-textual limitation'" on the statute, *id.* at *4 (quoting *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020)).

8

Judge Morgan was required to impose a life sentence on all three counts. *See* ECF No. 286 ¶ 58 (SEALED) (defendant's sentencing guidelines range); *United States v. Booker*, 543 U.S. 220, 245 (2005) (holding, seven years after Defendant Russell was sentenced, that sentencing guidelines ranges are not binding). Seemingly as a result, Judge Morgan said very little at the defendant's sentencing hearing about the reasons for his sentence. *See generally* Transcript of Sentencing Hearing, *United States v. Russell*, No. 1:97-cr-382.[5]

Nonetheless, it is clear to this Court that the defendant's sentence must have functioned as a package. Here, like in *Richardson*, "[t]he indictment indicates the [non-covered] and distribution of crack cocaine offenses are interconnected." 2024 WL 1183539, at *7. Defendant Richardson was convicted of conspiracy to distribute crack cocaine and heroin, distribution and possession with intent to distribute crack cocaine, money laundering, and engaging in a continuing criminal enterprise ("CCE"). *Id.* at *1. Presumably the continuing criminal enterprise involved at least drug trafficking and money laundering, which suggests the offenses were factually interconnected. Interconnectedness is even more straightforward in the instant case. One of the non-covered offenses—interstate transportation in aid of racketeering—was factually related to the crack distribution charge, because crack cocaine was one of the things the defendant transported. *Wesley*, 187 F.3d 633, at *1–3. But the other non-covered charge—aiding and abetting murder *in furtherance of a drug trafficking*

---

[5] The transcript of the sentencing hearing is docketed at ECF No. 56, but an electronic copy is not available.

*offense*—would likely not even exist as indicted without the allegations in the covered offense. Thus, the charges in the indictment were interconnected, which suggests they functioned as a package.

Additionally, Defendant Russell's "[non-covered] and distribution offenses were grouped together under the Guidelines for sentencing purposes," just like Defendant Richardson's were. *Richardson*, 2024 WL 1183539, at *7. As the Guidelines require, Defendant Russell was given one unified guidelines range—life— even though the ranges for his individual crimes standing alone would have been different if they had been charged separately. *See also* n.12, *infra.* As the Fourth Circuit acknowledged, grouping under the Guidelines is "perhaps the most common way to show interdependence." *Richardson*, 2024 WL 1183539, at *7 (quoting *United States v. Curtis*, 66 F.4th 690, 694–95 (7th Cir. 2023)). Therefore, the Court concludes that the way the Guidelines grouped the defendant's covered and non-covered offenses supports the conclusion that his sentence functioned as a package.

In addition to the nonbinding suggestions provided in *Richardson*, the Court looks to the sentencing judge's decision itself. Judge Morgan's choice to impose concurrent sentences weighs in favor of the conclusion that he meant for the defendant's total sentence to function as a package. Because he was required to sentence the defendant to life on all three counts, the only discretion Judge Morgan had was to run the sentences concurrently or consecutively. When a judge sentences a defendant to life in prison on one charge, whether the sentences on additional charges are concurrent or consecutive is primarily symbolic. *See United States v.*

*Grant*, 9 F.4th 186, 215 (3d Cir. 2021) (Ambro, J., concurring in part) (because a defendant sentenced to life "will die in jail on count A no matter what the judge does with count B," the judge might "choose to give only a trivial sentence on count B, knowing that it doesn't matter, or instead give an inordinately high sentence on count B, using it as a costless outlet to send a message and promote deterrence"); *Johnson v. Province*, No. 4:10-cv-34, 2013 WL 1390033, at *13 (N.D. Okla. Apr. 4, 2013) (adopting state court's observation that a trial judge may have considered the defendant's assistance to the government, "if only on a symbolic level," when deciding to impose concurrent life sentences). If Judge Morgan had wanted to capture the sense that the defendant's crack distribution was distinct from his role in the murder, he could have issued consecutive sentences; but he did not. The sentencing court's choice to impose concurrent sentences in this case suggests, however subtly, that the judge intended to sentence the defendant as a "whole person," rather than doling out punishment for each crime piecemeal. *Concepcion*, 597 U.S. at 486.

The government argues that because the defendant's "[g]uidelines range for all three counts of conviction was life[,] his ultimate guidelines range and sentence was [] not disproportionately intertwined or driven by the covered offense." ECF No. 332 at 5. However, that is not the standard the Fourth Circuit has adopted.[6] Given the

---

[6] The government's opposition to the motion for reconsideration was filed before the *Richardson* decision issued, and therefore the government did not have the benefit of the Fourth Circuit's language when crafting its response. The government's position was based on guidance from the Solicitor General, and it advanced a similar argument in the *Richardson* appeal. However, the Fourth Circuit opted to adopt a standard that is less rigid than what the government suggested. It deliberately chose

opportunity, the Fourth Circuit chose not to require district courts to determine which conviction 'drove' a defendant's total sentence. *Richardson*, 2024 WL 1183539, at *6 (responding to the government's argument that Defendant Richardson's CCE conviction was insufficiently "integrated" with his covered drug offense to form a package, because of the violent nature of the enterprise charge).[7] Therefore, even if,

---

"the approach that gives district judges the most flexibility in determining whether the counts function as a package." *Richardson*, 2024 WL 1183539, at *4.

[7] In *Richardson*, the government advocated for a rule that crimes that are distinct in nature—like a drug crime and a violent crime—could not "form[] . . . a single, integrated sentencing package." *Richardson*, 2024 WL 1183539, at *6 ("The government argue[d] Richardson's CCE and crack distribution offenses do not function as a package because the conduct on the CCE offense was a violent criminal enterprise which was discrete from [the] crack distribution conviction."). But the Fourth Circuit "declined" to adopt a bright-line rule under which the Court of Appeals would "decide in the first instance whether [a defendant's] charges function as a package," by reference to the nature of the offenses alone. *Id.* Thus, the sentence package doctrine in the Fourth Circuit has no explicit requirement that the offenses must be of a similar nature in order to function as a package.

In arguing for its preferred rule, the government relied on *United States v. Junius*, 86 F.4th 1027 (3d Cir. 2023). *See Richardson*, 2024 WL 1183539, at *6. The Fourth Circuit rejected that comparison. *See id.* at *6 n.11. But ironically, *Junius* does not recognize the kind of rule the government sought. Instead, it applies a principle very similar to the one announced in *Richardson*. Thus, as the Fourth Circuit recognized, "[t]he government's reliance on *Junius* [was] misplaced." *Id.* Still, this Court will briefly explain *Junius*, in the interest of making plain why that decision does not counsel against the outcome in the instant case.

In *Junius*, the Third Circuit held that murder in furtherance of a continuing criminal conspiracy was not a covered offense under the First Step Act. *Junius*, 86 F.4th at 1028. That issue was not presented in *Richardson*, and it has already been resolved here. ECF No. 321 at 6. *Junius* also included dicta on the sentence package doctrine. 86 F.4th at 1028 n.1. However, contrary to the government's suggestion in *Richardson*, the distinct nature of the crimes for which the *Junius* defendants were sentenced played no role in the Third Circuit's written decision regarding the doctrine. *See id.* Instead, the *Junius* Court stated that the sentence package doctrine

as the government argues, the defendant's "sentence was driven by the murder, not the crack dealing" (ECF No. 332 at 5), that does not resolve the question of whether the sentences function as a package. Nevertheless, the Court will address the government's argument in detail, because it gets at the core of the dispute that divides courts on this topic.

At first, it might appear to make little sense that the sentence for a more serious offense may be reduced merely because that offense was committed alongside a less serious crime that the First Step Act reaches directly. This case presents a helpful exemplar: Had the defendant been convicted only of aiding and abetting murder, he would not have been eligible for a sentence reduction under the First Step Act; but because he also distributed crack cocaine, he is eligible. But as much as that may seem like a perverse outcome, the result would be less just if the rule were otherwise. A rule where a drug conviction is susceptible to a sentence reduction unless it is packaged together with a more serious offense would provide relief for defendants who might have been charged conservatively, while cutting off access for defendants who might have been charged more aggressively. And because the current iteration of the Fair Sentencing Act does not fully solve crack cocaine and powder cocaine sentencing disparities, and a future law might finally bring the Guidelines

---

"[did] not apply" to the defendants' sentences for murder in furtherance of a continuing criminal enterprise and distribution of crack cocaine because "the sentencing court separated the murder offense of each [defendant] from the rest of his offenses" and imposed the sentences "independently." *Id*. As this Memorandum Opinion and Order explains in detail, that is not the case here.

into parity, the rule the government suggests could also incentivize prosecutors to charge more serious offenses in order to insulate drug-related sentences from later review.[8] Those outcomes would run at cross purposes with the First Step Act, which targeted racial inequity in charging as well as in sentencing.[9]

The government argues that the sentence package doctrine should not allow the Court to reach the defendant's sentence for aiding and abetting murder in furtherance of drug trafficking because "[i]t is virtually impossible to see how the quantity of crack cocaine at issue in [] Count [One] . . . has any bearing on the murder offense in [] Count [Two]." ECF No. 332 at 5.[10] But the government takes too narrow a view of the First Step Act. And, as the title of the law suggests, courts should be

---

[8] Adapting prosecutorial practices to secure finality is not inherently nefarious by any means—rather, it is honorable in most cases. But it is critical that the courts' methods do not transform the government's honorable intentions into unjust outcomes.

[9] For example, by limiting the terms "serious drug felony" and "serious violent felony" as they are used in 18 U.S.C. § 924, the First Step Act limited the impact of prior convictions on defendants' later sentences on gun charges. First Step Act, Pub. L. 115-391, § 401, 132 Stat. 5222 (2018). Although the most obvious result was to reduce sentencing enhancements in new gun cases, the law also mitigated the problem of compounding convictions, independent of sentencing.

[10] In his reply in support of the motion for reconsideration, the defendant asserts that the government is barred from arguing that the sentence package doctrine does not apply to the instant case because, as the defendant sees it, the government previously conceded that the doctrine does apply. ECF No. 333 at 6–13. Now that the Fourth Circuit has provided clarity on the sentence package doctrine, the Court can determine in the first instance whether it applies here. Because the Court independently concludes that the doctrine does apply, it need not decide whether the government was barred from arguing that it does not. The Court addresses the government's argument here, without deciding whether it was procedurally barred, because doing so aids the Court in explaining the rationale underlying the principle that permits the Court to revisit the defendant's sentence under the First Step Act.

wary of an interpretation that would encourage them to merely correct sentences that map perfectly onto one highly visible form of inequity—crack and powder cocaine sentencing disparities—then rest from their work as though racial injustice in the criminal legal system has been solved.

The purpose of the First Step Act is to "ensure greater *justice* for those subject to racially disparate sentencing schemes"—not merely to correct the disproportionate sentences that result from those schemes. *United States v. Swain*, 49 F.4th 398, 401 (4th Cir. 2022) (emphasis added). Put differently, the First Step Act recognizes that disparate sentencing schemes are just one facet of a criminal legal system that often produces racially disparate outcomes. *Cf., e.g.*, *Mandala v. NTT Data, Inc.*, 988 F.3d 664, 671 (2nd Cir. 2021) (dissent) (noting that "racial disparities in conviction and arrest rates will persist across all education levels"); *United States v. Moore*, No. 3:21-cr-42, 2024 WL 552794, at *1 (E.D. Va. Feb. 12, 2024) (dismissing an indictment on grounds that police stopped the defendant, a Black driver, pursuant to a pattern of selective enforcement); *Floyd v. City of New York*, 959 F. Supp. 2d 540, 665 (S.D.N.Y. 2013) (granting judgment for the Black and Hispanic plaintiffs in a collective action based on unconstitutional policing practices); *Jones v. City of Faribault*, No. 18-cv-1643, 2021 WL 1192466, at *17 (D. Minn. Feb. 18, 2021) (denying summary judgment to the city, where the plaintiffs alleged the city's housing policy disproportionately impacted people of color on the basis of contacts with the criminal legal system).

"Greater justice" requires that, as between a rule that might provide access to relief for too many defendants affected by an inequitable practice and a rule that

might provide access to too few, courts must choose the former, and place the burden of the difference upon the government rather than the individual. How courts are instructed to approach intractable ambiguity in criminal statutes further supports this conclusion. When a criminal law is ambiguous and one plausible reading would be more favorable to a criminal defendant, the rule of lenity tells courts to choose that interpretation. *United States v. George*, 946 F.3d 643, 646 (4th Cir. 2020). The rule of lenity does not apply in this case; but it would seem inconsistent for courts to, on the one hand, read criminal statutes more favorably for the accused when faced with intractable ambiguity, but on the other opt for a narrow rule here that provides less access to relief for criminal defendants.

The First Step Act's second phase of analysis at the very least ameliorates—if not outright eliminates—the concern the government raises. District courts are required to consider the sentencing factors outlined in 18 U.S.C. § 3553(a), which include both "the nature and circumstances of the crime" and "the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to provide just punishment for the offense." And "the district judge is not required to reduce any sentence under the First Step Act." *Richardson*, 2024 WL 1183539, at *6 (affirming *United States v. Reed*, 58 F.4th 816, 819 (4th Cir. 2023)). Therefore, in any case where the district court concludes that a sentence functions as a package, but the defendant should not receive a reduction in sentence, the court still is free to deny relief.

In the instant case, the defendant's sentence clearly functions as a package. Therefore, even though one of his non-covered offenses dealt with conduct more

severe than drug distribution, the Court has the authority to reduce the defendant's overall sentence. In its discretion, the Court will exercise that authority.

### C. The Defendant's Sentencing Guidelines Range is Life.

Pursuant to U.S.S.G. §§ 3D1.1(a)(1) and 3D1.2, all three counts are grouped together for the purpose of calculating the defendant's sentencing guidelines range. The base offense level is 43. U.S.S.G. §§ 2A1.1, 2X2.1. A two-level enhancement applies because the victim was "physically restrained in the course of the offense," which brings the total offense level to 45. U.S.S.G. § 3A1.3. The defendant is assessed four criminal history points based on his convictions prior to the conduct in this case, plus three additional criminal history points based on the Guidelines that were in place at the time he was sentenced. *See* ECF No. 286 at 24 (SEALED); U.S.S.G. § 4A1.1(d)–(e) (U.S. SENT'G COMM'N 1997).[11] This results in a criminal history

---

[11] The defendant was originally assessed three additional criminal history points because he was on probation at the time of the offenses in this case, and the offense conduct occurred less than two years after he was released from a sentence of imprisonment. ECF No. 286 at 24 (SEALED); *see* U.S.S.G. § 4A1.1(d)–(e) (U.S. SENT'G COMM'N 1997). The defendant would not be assessed those additional points under today's Guidelines. *See* U.S.S.G. § 4A1.1 (U.S. SENT'G COMM'N 2023); U.S.S.G. Amend. 742 (U.S. SENT'G COMM'N Nov. 1, 2010) (striking the rule that factored in whether the defendant "committed the instant offense less than two years after release from imprisonment on" another sentence); U.S.S.G. Amend. 821 (U.S. SENT'G COMM'N Nov. 1, 2023) (striking the rule that added two points "if the defendant committed the instant offense while under any criminal justice sentence"). However, the Supreme Court has instructed that, when considering a motion for sentence reduction under the First Step Act, "[a] district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 597 U.S. at 498; *see Troy*, 64 F.4th at 184–85. Therefore, the Court must leave the original calculations in place. However, the Court notes that the changes in criminal history category calculations would not alter the defendant's advisory guidelines range.

category of IV. Based on these calculations, the defendant's sentencing guidelines range is life.[12]

### D. The Sentencing Factors Weigh in Favor of Reducing the Defendant's Sentence to 360 months.

In fashioning a new sentence, the Court looks to the factors outlined in 18 U.S.C. § 3553(a), taking into account post-sentencing conduct and mitigating evidence. *Lancaster*, 997 F.3d at 175; *McDonald*, 986 F.3d at 411. The Court has—as it must—considered all the factors outlined in 18 U.S.C. § 3553(a).[13] The factors discussed herein stand out as especially informative in this case.

The Court's understanding of the "nature and circumstances of the [defendant's] offenses" comes from the parties' briefing and the Fourth Circuit's recitation of the facts in the opinion affirming the defendant's conviction. 18 U.S.C. § 3553(a)(1); *see* ECF Nos. 271, 296; *Wesley*, 187 F.3d 633, at *1–3. The defendant dealt drugs in Prince George's County, Maryland with a person named Colin Rose. ECF No. 296 at 2. When Rose learned that another dealer, Raymond Mills, allegedly

---

[12] In its original Memorandum Opinion and Order on the motion for sentence reduction, the Court stated that, if it were calculated today, the defendant's base offense level for Count One would be 34. ECF No. 321 at 4 n.2. That is incorrect, because the crack cocaine charge was cross-referenced to U.S.S.G. § 2A1.1. In fact, the base offense level for the crack cocaine charge would also remain unchanged, at 43 (before the application of U.S.S.G. § 3A1.3). This is the principle the *Richardson* Court referenced when it described charges being "grouped together under the Guidelines for sentencing purposes"—the principle it called "the most common way to show interdependence" for purposes of the sentence package doctrine 2024 WL 1183539, at *7 (citation and quotation marks omitted).

[13] Because the Guidelines were mandatory at the time, the sentencing court never engaged in this analysis.

spread rumors that Rose was a snitch, the defendant offered to have a friend—Johnny Lee Wesley, who later became his co-defendant—beat up and rob Mills, in exchange for money, jewelry, guns, and cocaine. *Id.* at 3. Wesley met with Rose and the defendant to plan the attack. *Id.* at 4. Two days later, Rose and the defendant learned that Wesley and Wesley's cousin had killed Mills. Police found Mills dead on the floor of his apartment, with his face, hands, and feet bound with duct tape and with duct tape wrapped tightly around his neck. *Id.* at 2. Investigators determined that Mills died by strangulation. *Id*.

In its opposition to the motion for sentence reduction, the government does not assert that the defendant intended for Wesley to kill Mills or even that the defendant had reason to believe Wesley or Wesley's cousin might bind and strangle the victim. *See also Wesley*, 187 F.3d 633, at *5 (noting that, when Rose pleaded guilty and cooperated in the prosecution of the defendant, Rose's statement of facts asserted that "Rose did not direct, suggest, or encourage them to kill Mills"). However, there was evidence that the defendant knew or should have known that Wesley was prepared to do more than merely beat up Mills, because during a meeting to plan the robbery, Wesley showed Rose a handgun, while the defendant was present. ECF No. 296 at 4.

There is no doubt that dealing and transporting drugs and soliciting an attack on another person are grave and serious offenses. *See* 18 U.S.C. § 3553(a)(2)(A). But when the Court looks at the defendant's history in order to determine whether he is likely to commit "further crimes" of a violent nature, 18 U.S.C. § 3553(a)(2)(C), it notes that all his prior convictions were for possession and possession with intent to

distribute drugs. ECF No. 286 ¶¶ 27–29 (SEALED). The only hint of any violent behavior in the defendant's criminal history is a battery *charge* that was placed on the "stet docket"—an administrative device typically used in Maryland state courts to enable defendants to complete a diversion program or demonstrate good behavior for a period of time before their case is dismissed. *Id.* ¶ 35; *see* Md. Code Ann., Criminal Cases § 4-248 (West 2022).[14] While incarcerated, the defendant has been charged with an institutional offense only three times—and not in the last 25 years. The Court finds the circumstances surrounding these three institutional violations telling. The first was for "being unsanitary or untidy"—a charge so trivial it hardly bears mentioning. ECF No. 271-1 at 5. The second was for assaulting a staff member; but institutional records indicate that the defendant was "sanction[ed] below [the] prescribed limit," based on "mitigating circumstances." *Id.* Finally, the defendant was sanctioned for "kissing his visitor during the visit," which does not concern the Court in its evaluation of the sentencing factors. *Id.*

   Despite having no significant history of violence, the defendant has taken the initiative to complete extensive training in anger management while in prison. ECF No. 271-1 at 3 (inmate education data). The defendant has also availed himself of substance use treatment. *Id.* Just as importantly, he has engaged in extensive career development training, which will help him to be a productive member of society when he is released, and not return to selling drugs. *Id.* The Bureau of Prisons has classified

---

[14] *See Stet in a Maryland Criminal Case: What You Need to Know,* JEREMY WIDDER LAW, https://perma.cc/F83C-LL3W (last visited Apr. 8, 2024).

the defendant as a "low risk" of recidivism and "continuously housed him in medium-risk facilities," which are the "lowest custody level in which an inmate serving a life sentence can be placed." *Id.* at 6 (inmate profile); ECF No. 271 at 8.

The support roles the defendant has taken on in prison also indicate that he has learned to value and respect human life. The defendant "was selected to participate in the Inmate Companion Suicide Watch Program." ECF No. 271 at 7. Through that program, he "monitored inmates who were at risk of suicide and self-harm[] and provided mentorship and support to them." *Id.* at 7–8. The defendant's friend, Daniel Frenzel, recalls that as a basketball and softball coach to other inmates, the defendant "was the voice of reason in many situations that occurred." ECF No. 271-2 at 1. Frenzel believes that the defendant's influence on those he interacted with while incarcerated has "had a great impact on reducing prison misconduct as well as recidivism." *Id.*

Even though the defendant was sentenced to life in prison, he has taken part in "correctional treatment" designed to prepare him for a productive career in society. 18 U.S.C. § 3553(a)(2)(D). Most notably, he has earned a National Career Readiness Certificate through the WorkKeys program and is certified in advanced microcomputer applications through Lamar State College. ECF No. 271-1 at 3; ECF No. 271-3 at 1–2. At the time he filed his motion for sentence reduction, the defendant was working in the Unicor program, which "assists offenders in learning the skills necessary to successfully transition from convicted criminals to law-abiding, contributing members of society." ECF No. 271 at 7.

Judge Morgan ordered the defendant to "pay $100 per month child support for each of [Mills's] three children, so long as they are eligible for such support." Transcript of Sentencing, *United States v. Russell*, No. 1:97-cr-382, at 19. The Court understands that the three children are all of age now, so the defendant is no longer able to pay "restitution to [the] victims of [his] offense" in this manner. 18 U.S.C. § 3553(a)(7). However, the defendant has still "spen[t] his money at commissary" to provide "basic hygiene items and snacks" for "those that were without and did not have anything," and he "routinely donat[es] part of his wages to religious nonprofit organizations." ECF No. 271-2 at 1; ECF No. 271 at 9. The defendant also contributes nonmonetary support to the community to which he will return. The defendant has been an active participant in the lives of his own three children—now in their 20s and 30s—who have all grown up to be productive members of society. ECF No. 271 at 11. He "frequently writes devotionals" for his family and friends and provides "wisdom and counsel" to his brother, a pastor, regarding community decisions. *Id.* at 12–13 (quotation marks omitted). By "mentor[ing] young men who are new to the prison system," the defendant also contributes to the wellbeing of other communities, where those he has mentored will live and work. ECF No. 271-2 at 8 (letter from Terri Russell); *see also* 271-2 at 1 (Frenzel explaining his belief that the defendant's influence helps to reduce recidivism); ECF No. 271 at 8–9 (describing the "inmate correspondence ministry" the defendant founded, which connects people "struggling with incarceration" to church members on the outside).

The Court has carefully considered "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, the closest and most apt comparison is between the two defendants in the instant case. Defendants Russell and Wesley received identical sentences for identical charges. But the evidence before the Court suggests Defendant Russell's culpability in the criminal conduct was substantially lower than Defendant Wesley's. Moreover, Defendant Russell's rehabilitation is so exemplary that it distinguishes him from many other defendants.

Finally, the Court has heavily weighed the effect of the defendant's conduct on the victim's surviving family and the role the motion for sentence reduction has played in their lives. At the time of sentencing, the defendant vehemently maintained that he was innocent. Transcript of Sentencing, *United States v. Russell*, No. 1:97-cr-382, at 12–16. Now, "he takes full responsibility for his actions and deeply regrets his involvement in the events that led to Raymond Mills['s] death." ECF No. 271 at 6. After the defendant filed his motion for sentence reduction under the First Step Act, the Assistant United States Attorney and the government's Victim-Witness Coordinator spoke with the victim's mother several times.

> During discussions, she asked whether the defendant has expressed any remorse for his actions. The government sent her the defendant's statement in this regard, along with other letters of support by the defendant's family and friends. On November 3, 2023, the Victim-Witness Coordinator spoke by telephone with the victim's mother. She told the Victim-Witness Coordinator that if the law permitted the Court to reduce his sentence, she did not object to the defendant's release. She said that he "has served his time."

23

ECF No. 332 at 7. As of the date of this Memorandum Opinion and Order, the defendant is 54 years old, and he has spent 26 years—nearly half of his life—in prison.

* * *

As explained in Part III.C., above, the defendant's sentencing guidelines range is still life. However, this Court is no longer bound to that recommendation, as Judge Morgan was when he sentenced the defendant. *Hughes v. United States*, 584 U.S. 675, 681 (2018) (citing *Booker*, 543 U.S. 220) (since the Supreme Court's decision in *Booker,* "the Guidelines are advisory only").

The Court finds that the balance of the sentencing factors favors reducing the defendant's sentence to a term of 360 months. This new sentence is "sufficient" to satisfy the goals of punishment but "not greater than necessary." 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 111 (2007); *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010).

During Fiscal Year 2023 (the most recent data available), federal sentences for murder averaged 285 months nationwide and 295 months in the Fourth Circuit. Sentences for drug trafficking averaged 82 months nationwide and 91 months in the Fourth Circuit.[15] Considering all the factors under 18 U.S.C. § 3553(a) and weighing heavily the defendant's relative culpability in the murder as well as his acceptance of

---

[15] *Sentence Length by Type of Crime*, U.S. SENT'G COMM'N, https://perma.cc/VYU2-VVWG (last visited Apr. 8, 2024).

responsibility and exemplary rehabilitation, the Court determines that a sentence of life would be greater than necessary in this case. Instead, a sentence commensurate with the sum of the national average sentences for the two remaining offenses is sufficient and appropriate.[16] Thus, the Court will vary downward from the guidelines range of life and resentence the defendant to 360 months of incarceration.[17]

---

[16] There is a procedural wrinkle in this case that requires explanation. When it granted in part the defendant's motion for sentence reduction and reduced the sentence on Count One to time served, the Court believed it was not permitted to reach the remainder of the defendant's sentence. Therefore, the Court reduced the sentence on the covered offense to the amount of time it deemed appropriate for that individual charge—time served. Because it did not apply the sentence package doctrine, the Court did not consider whether the defendant had effectively been given one unified sentence, or what the appropriate adjusted sentence on all three counts together would be. Put differently, the Court's new sentence of time served on Count One did not reflect its assessment of the defendant's whole sentence. Had the Court initially evaluated the defendant's entire sentence as a package, it would not have reduced Count One to time served—it would have fashioned a sentence that also took into account the more severe conduct for which the defendant was convicted in Counts Two and Six. Since the Court already reduced the sentence on Count One to time served, the defendant has completed that sentence, and the Court does not have the opportunity to resentence the defendant on all three counts together. However, if the Court had the opportunity today to re-evaluate the defendant's entire sentence as a package, it would not reduce the sentence as far as it reduced the individual sentence on Count One—instead, it would reduce the defendant's total sentence, including Count One, to 360 months.

[17] The Court recognizes that reducing the defendant's sentence to 360 months will likely result in his release, given that he appears to have served more than 85% of that time. While the determination of good-time credit ultimately rests with the Federal Bureau of Prisons, the Court has nevertheless considered the defendant's release plan and finds it appropriate. *See* ECF No. 271 at 38–39.

## IV.    CONCLUSION

The Court does not make this decision lightly. And it hopes that Mr. Russell will—consistent with the representations he, his counsel, and the letters written in support of him have made—continue to walk the path that he has forged during his period of incarceration. It is also this Court's *expectation* that Mr. Russell take his progress outside the walls of FCI Edgefield—that he put into practice the lessons he has learned, the mentoring he has done, and the mental and emotional growth he has clearly achieved. Critically, Mr. Russell should make a concerted effort to mentor young people and to allow the story of his incarceration to serve as a cautionary tale. But, if he applies himself the way he seems capable of doing, that cautionary tale will be an arc, not the end of his story.

The correctional system is, no doubt, imperfect. But Mr. Russell now has an opportunity to serve as an example of a criminal defendant who took advantage of the time he had to reflect on the choices he made, who put in the hard yards to change, and who re-entered society as a law-abiding citizen.

Defendant Terrence Renard Russell's Motion for Reconsideration (ECF No. 326) is **GRANTED**.

The Court's Memorandum Opinion and Order (ECF No. 321) on the defendant's motion to reduce sentence is **VACATED IN PART**, as to Counts Two and Six.

The defendant's Motion to Reduce Sentence Pursuant to § 404 of the First Step Act of 2018 is **GRANTED.**

The Defendant's sentence is **REDUCED** to 360 months of incarceration. This term of imprisonment consists of 360 months on Count Two and 360 months on Count Six to run concurrently to one another and to the modified sentence of time served the Court previously imposed on Count One (ECF No. 321).

All other portions of the judgment in this case remain in effect.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record and to the Federal Bureau of Prisons.

**IT IS SO ORDERED.**

_____ /s/ _____

Jamar K. Walker
United States District Judge

Norfolk, Virginia
April 15, 2024